703 So.2d 1331 (1997)
Jack A. KANZ, Independent Executor of the Estate of Lena Kanz, Deceased,
v.
Edna Bell Kanz WILSON.
No. 96 CA 0882.
Court of Appeal of Louisiana, First Circuit.
November 17, 1997.
Rehearing Denied January 8, 1998.
*1333 John David Ziober, Baton Rouge, for Plaintiff/Appellee Jack A. Kanz, Independent Executor of the estate of Lena Kanz, Deceased.
Richard A. Curry, Baton Rouge, for Defendant/Appellant Edna Belle Kanz Wilson.
Before GONZALES and KUHN, and CHIASSON [1], J. Pro Tem.
KUHN, Judge.
This appeal arises from a dispute regarding the ownership of two certificates of deposit ("CDs") and other cash funds. Defendant-appellant, Edna Belle Kanz Wilson, appeals from a partial summary judgment in favor of plaintiff-appellee, Jack A. Kanz, the independent executor ("executor") of the estate of Lena Kanz, which declared the estate to be the owner of the CDs and the cash funds.[2] We affirm.

I. FACTS AND PROCEDURAL BACKGROUND
Mr. Kanz, in his capacity as executor of the estate, sought a judgment against Wilson declaring certain funds to be the property of the estate and awarding the full amount of the funds to Kanz as executor.[3] The assets involved in this litigation include four CDs and accumulated interest, with the original amount of the four CDs being in excess of $300,000.00. Two of the CDs were originally issued in Louisiana and these funds remain on deposit in Louisiana ("the Louisiana CDs"). The other two were originally issued in Illinois ("the Illinois CDs").
The funds of the LaSalle Talman Bank CD (one of the Illinois CDs), originally issued in the amount of $74,314.38, remain on deposit in Illinois ("the LaSalle Talman Account"). Upon Mrs. Wilson's request after Ms. Kanz's death, the funds from the other Illinois CD (issued by the First National Bank of Chicago and totaling $93,800.76) were sent to Mrs. Wilson upon maturity on March 21, 1994. Those funds were deposited into an account in the Bayou Federal Credit Union in Louisiana ("the Bayou Federal Account").
Also at issue in this dispute is the ownership of $40,000.00 on deposit in a credit union account bearing the name of Edna Wilson and her husband, Kenneth Wilson. These funds were transferred from a joint checking account in the names of Lena Kanz or Edna Wilson to the credit union account prior to Ms. Kanz's death ("the Transferred Funds"). The parties also dispute the ownership of $10,921.78, representing cash funds withdrawn from the LaSalle Talman CD, which *1334 the Wilsons used to finance a trip ("the Trip Funds").[4]
On October 18, 1994, Mr. Kanz filed a motion for partial summary judgment seeking an award of the full amount of the two Louisiana CDs and all interest which had accrued on the Louisiana CDs since the death of Ms. Kanz. Mr. Kanz asserted that: 1) Wilson claimed ownership by virtue of donations pursuant to the creation of the CDs as joint tenancies with right of survivorship; and 2) the purported donations were invalid because an authentic act is required for the donation of incorporeal immovables (the CDs) pursuant to La. C.C. art. 1536.
On November 14, 1994, Wilson filed a motion for summary judgment asserting there were no genuine issues of material fact with respect to the ownership of three CDs, the Illinois CDs and one of the Louisiana CDs. Ms. Wilson asserted that: 1) the CDs were created as joint tenancies with the right of survivorship between Mrs. Wilson and Ms. Kanz, and that upon Ms. Kanz's death, Mrs. Wilson owned the CDs;[5] and 2) because Mrs. Kanz was a Texas domiciliary at the time of her death and Mrs. Kanz's succession had been opened in Texas, the disposition of the CD's should be governed by Texas law. Mrs. Wilson has never argued that the donations would be valid under Louisiana law.
After a hearing on February 24, 1995, the trial court rendered judgment in favor of plaintiff on both pending motions. The trial court found Ms. Kanz was domiciled in Louisiana at the time of her death and applied Louisiana law to determine ownership of the Louisiana CDs. A written judgment in favor of Mr. Kanz was signed on March 2, 1995 ("the first summary judgment"). The trial court declared the estate to be the owner of the Louisiana CDs, and ordered Mrs. Wilson to immediately turn over to Mr. Kanz the possession and ownership of the Louisiana CD accounts.
Mrs. Wilson devolutively appealed the March 2, 1995 judgment. After the appeal order was granted on April 6, 1995, the parties filed with the district court a joint motion to supplement the record of the February 24, 1995 hearing with evidence which had not been introduced or filed into the trial court record. The trial court ordered the supplementation of the record. On appeal, this court found the supplementation was improper. After concluding that the evidence in the record was insufficient to support a judgment in plaintiff's favor, the March 2, 1995 judgment granting Mr. Kanz's motion for summary judgment pertaining to the Louisiana CDs was reversed. Kanz v. Wilson, 95-1824 (La.App. 1st Cir. 4/4/96) (unpublished). The matter was remanded for further proceedings.
On March 2, 1995, Mr. Kanz filed another motion for summary judgment. Pursuant to this motion, Mr. Kanz sought a judgment declaring the estate to be the owner of the Illinois CD accounts, the Transferred Funds, and the Trip Funds. Mr. Kanz asserted that: 1) the purported donations of the CDs were invalid because Ms. Kanz had not executed an authentic act donating the CDs to Mrs. Wilson; 2) defendant failed to produce any document evidencing a donation of the Trip Funds; and 3) Mrs. Wilson admitted the Transferred Funds were property of Ms. Kanz but refused to turn over the funds to Mr. Kanz.
In opposition to the motion for summary judgment, Mrs. Wilson acknowledged that the donations were not made in authentic form and would not be valid under Louisiana law. However, Mrs. Wilson asserted that 1) Mr. Kanz had judicially admitted that Ms. Kanz was domiciled in Texas, and 2) Louisiana law does not control the validity of these transactions.
After determining that Ms. Kanz was domiciled in Louisiana, that Louisiana law *1335 controlled the issue of the validity of the donations, and that the donations were not valid pursuant to Louisiana law, the trial court granted Mr. Kanz's motion for summary judgment. The April 25, 1995 judgment ("the second summary judgment") 1) declared the estate to be the owner of the Bayou Federal Account, the LaSalle Talman Account, and the interest, income or dividends which have accumulated or which have been paid on or from the accounts from January 22, 1994, through the date all funds are delivered to Mr. Kanz; 2) ordered Mrs. Wilson to provide an accounting for these funds and to turn them over to Mr. Kanz; and 3) ordered that there be judgment in favor of Mr. Kanz and against Mrs. Wilson in the amount of $50,921.78 (the amount of the Trip Funds and the Transferred Funds).
Mrs. Wilson has appealed[6] raising the following specifications of error:
1. The trial court was divested of jurisdiction to consider the second summary judgment while the first summary judgmentraising the identical legal issue (choice of law) and the identical factual issue (the decedent's domicile)was pending on appeal.
2. The trial court erred in finding that Lena Kanz was domiciled in Louisiana at the time of her death. The Executor judicially confessed that Lena Kanz was domiciled in Texas at the time of her death. Even if the Executor's admission is not controlling, Edna Wilson nevertheless has amply demonstrated that there are material issues of fact regarding whether Lena Kanz ever changed her domicile from Illinois to Louisiana.
3. The trial court erred in finding that Louisiana substantive law should be applied to determine the validity of the donations at issue on this appeal.[7]

II. ANALYSIS

A. Jurisdiction
Appellant contends the only issue presented in the first summary judgment was the choice of law/domicile issue and that the same issue was presented in the second motion for summary judgment. Appellant asserts that when the trial court signed the order granting the appeal from the first judgment, the trial court was divested of jurisdiction over "all matters in the case reviewable under the appeal ...," citing La. C.C.P. art.2088. Since appellant argues that the choice of law/domicile issue was the only issue raised in both summary judgments, she contends the trial court was divested of jurisdiction to consider the second summary judgment while the appeal of the first judgment was pending. She asserts that La. C.C. art. 968, which addresses partial summary judgments, authorized the trial court to retain jurisdiction to decide only the issues remaining in the case which were not already pending on appeal.
We find no merit in appellant's argument. The first appeal presented the issue *1336 of the validity of the purported donations of the Louisiana CDs. Mr. Kanz's second motion for summary judgment and this appeal presents the issue of the validity of the purported donations of the Illinois CDs, the Trip Funds and the Transferred Funds. Although both of Mr. Kanz's motions for summary judgment involve choice of law issues, which require a consideration of Ms. Kanz's domicile, we conclude the appeal of the first summary judgment did not divest the trial court of jurisdiction to adjudicate the second motion for summary judgment because the ownership of different property interests was being adjudicated pursuant to each motion. See Welch v. Crown-Zellerbach Corp., 365 So.2d 586, 590 (La.App. 1st Cir.1978).

B. Summary Judgment
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993); Madden v. Bourgeois, 95-2354, p. 3 (La.App. 1st Cir. 6/28/96); 676 So.2d 790, 792. At the time this suit was filed, Louisiana law discouraged summary judgments. However, by Acts 1996, First Extraordinary Session, No. 9, the legislature amended La. C.C.P. art. 966, stating in pertinent part in paragraph A(2) that:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish these ends.
Since this amendment is a procedural change in the law, we apply it retroactively to this case. La. C.C. art. 6; Short v. Giffin, 96-0361, p. 5 (La.App. 4th Cir. 8/21/96); 682 So.2d 249, 253; writ denied, 96-3063 (La.3/7/97); 689 So.2d 1372; NAB Natural Resources, L.L.C. v. Willamette Indus., 28,555, p. 3 (La.App.2d Cir. 8/21/96); 679 So.2d 477, 479.[8]
La. C.C.P. art. 966B provides, in pertinent part:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.

C. Choice of Law
Appellant acknowledges the donations are not valid if Louisiana law controls because the donations were not made in authentic form. However, she asserts Louisiana law is not controlling.
Appellant contends Ms. Kanz's domicile at the time of her death should be the decisive factor in determining which state's law is applicable to determine the validity of the purported donations. Appellant maintains the trial court properly found that Ms. Kanz's domicile controls the choice of law applicable to determine the validity of the donations, citing Succession of Villere, 411 *1337 So.2d 484 (La.App. 4th Cir.1982). However, appellant asserts the trial court erred in determining that Louisiana was Ms. Kanz's domicile. In response, appellee asserts Ms. Kanz was domiciled in Louisiana upon her death and that, in addition to Ms. Kanz's domicile, other factors addressed by Louisiana's conflict of laws provisions (enacted by 1991 La. Acts 923, § 1) should be considered.
Appellant generally asserts that the application of Act 923 will disturb her vested rights in the application of the conflicts law in effect in 1989 when the CDs were established as joint tenancies. Alternatively, appellant asserts that if Act 923 is applicable, the state of the donor's domicile has a compelling interest in recognizing and honoring the intent of the donor.
We find no merit in appellant's argument that application of Act 923 would disturb vested rights. Appellant asserts the choice of law issue is governed by Ms. Kanz's domicile upon her death. Since Ms. Kanz did not die until 1994, and since her domicile as of that date could not have been determined as of 1989, we find Ms. Wilson has no vested interest in the application of the earlier law. Additionally, under La. C.C. art. 3515 (as enacted by Act 923), "the relationship of each state to the parties and the dispute" is considered in determining the state whose policies would be most seriously impaired if its law were not applied. The 1991 Revision Comments (c) following article 3515 state, "The relationship with the parties may consist of anything from the formal bond of citizenship or domicile, past or present, to habitual or mere residence." Thus, Ms. Kanz's residence and/or domicile are factors appropriately considered under La. C.C. art. 3515. Since Ms. Kanz's domicile will be considered in determining which state's law is applicable, we find no merit in appellant's argument that she is being deprived of any vested rights by the application of La. C.C. art. 3515 et seq. to the facts of this case.
Section 4 of 1991 La. Acts 923 provides that the act "shall become effective on January 1, 1992, and shall apply to all actions filed after that date." The petition in this matter was filed on May 24, 1994. Thus, we find the act is applicable to this case. The following pertinent provisions were enacted pursuant to Act 923:
Art. 3515. Determination of the applicable law; general and residual rule
Except as otherwise provided in this Book[9], an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
(Footnote added).
Art. 3536. Real rights in corporeal movables
Real rights in corporeal movables are governed by the law of the state in which the movable was situated at the time the right was acquired.

* * * * * *
The Revision Comments (a) following La. C.C. art. 3536 state that incorporeal movables are intentionally excluded from the scope of Article 3536. The comments further state, "Consequently, the inherently more complex conflicts that involve incorporeals should be resolved under the flexible formula of Article 3515, the residual article."
The parties apparently do not dispute the CDs are incorporeal movables. La. C.C. art. 473; Succession of Amos, 422 So.2d 605, 608 (La.App. 3d Cir.1982). Accordingly, we find La. C.C. art. 3515 controls the conflicts of law analysis pertaining to the CDs.
Regarding the Trip Funds, appellant's deposition testimony establishes that eight days prior to Ms. Kanz's death, appellant telephoned the LaSalle Talman Bank with instructions that some of the CD funds *1338 be reinvested and the $10,921.78 balance be sent to her in the form of a check. Since the Trip Funds were originally part of the CD funds prior to the transfer of the funds to Ms. Wilson, we conclude the law applicable to incorporeal movables, La. C.C. art. 3515, governs the conflicts of law analysis pertaining to these funds.
The source of the Transferred Funds was a joint savings account. An account on deposit is an incorporeal right. La. C.C. art. 473; Broussard v. Broussard, 340 So.2d 1309, 1313 (La.1976); Burkes v. Barbour, 364 So.2d 1059 (La.App. 2d Cir.1978). Thus, La. C.C. art. 3515 also governs the conflicts of law analysis pertaining to these funds.

1. The relationship of each state to the parties and the dispute

a. Residence/Domicile
In examining the relationship of each state to the parties and the dispute pursuant to La. C.C. art. 3515, we conclude the policies of the state where Ms. Kanz resided or was domiciled at her death should be considered. Ms. Kanz was born in Texas during 1900, attended nursing school in Austin, Texas, and then moved around 1944 or 1945 to Chicago, Illinois, where she worked as a nurse. She moved to Baton Rouge, Louisiana, during April of 1989. She remained in Louisiana until her death in January, 1994. From the time she moved to Louisiana through the date of her death, she did not reside in Texas or Illinois. While living in Louisiana, she filed Louisiana residence tax returns.
According to Mrs. Wilson's deposition testimony, Ms. Kanz began discussing a move to Texas during 1986. This move never materialized. Sometime around March of 1989, while she was living in Chicago, Ms. Kanz injured her hip and required hospitalization. She requested assistance from her niece, Mrs. Wilson, to accomplish a temporary move to Louisiana. Mr. and Mrs. Wilson traveled to Chicago to assist her.
Ms. Kanz vacated her apartment during early to mid-April of 1989, and traveled to Baton Rouge. Prior to the move to Louisiana, Ms. Kanz executed a power of attorney. While Mrs. Wilson was in Chicago, she assisted Ms. Kanz with various banking concerns and made arrangements with the financial institutions to establish the various joint accounts.[10] Upon Ms. Kanz's arrival in Baton Rouge, she was hospitalized for approximately two months.
During approximately mid-June of 1989, Ms. Kanz moved to a nursing care center in St. James Place in Baton Rouge, Louisiana. At that time, she was able to walk unassisted with a walker for a short distance. She was eighty-nine years old. She lived at the nursing home until her death during 1994, at the age of ninety-four. During the time she lived at the nursing home, Ms. Kanz used Mrs. Wilson's Baton Rouge mailing address for all of her financial correspondence, although some medical bills were mailed to Ms. Kanz at St. James Place. Ms. Kanz's will was kept in a safe in Mrs. Wilson's home in Baton Rouge. Ms. Kanz's funeral was held in Clifton, Texas. Although Ms. Kanz did not have a home in Texas, she referred to Clifton, Texas, as "her home."
La. C.C. art. 38 sets forth the general definition of domicile, as follows:
The domicile of each citizen is in the parish wherein he has his principal establishment.
The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected.
La. C.C. art. 41 addresses a change of domicile, providing as follows:

*1339 A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one's principal establishment there.
In Successions of Rhea, 227 La. 214, 78 So.2d 838, 842 (1955), the supreme court set forth the following basic tenets regarding the law pertaining to domicile:
A change of domicile is brought about by the actual residing in another place with the intention of making it the principal establishment or home....
While the presumption of original domicile continues until fixed elsewhere, whenever a person has acquired a residence elsewhere and actually resides there this will be presumed to be his domicile until the contrary is shown. The presumption arising from actual residence in a place is that the party intends to remain there. In other words, where a person lives is taken prima facie to be his domicile until the facts show the contrary.
We realize that where a person maintains more than one establishment that it is often difficult to determine which establishment is the domicile but where a person maintains and actually lives in only one residence it would appear to us that that is his domicile. The fact that [a person] may have entertained a floating intention to return to [a state] at some future date is immaterial.
The acts and conduct of the parties speak louder than words when it comes to a determination of domicile.... Words may be evidence of a man's intention to establish his domicile at a particular place of residence, but they cannot supply the fact of his domicile there. In such circumstances, the actual fact of residence and a real intention of remaining there, as disclosed by his entire course of conduct, are the controlling factors in ascertaining his domicile....
(Citations omitted).
Appellant urges that appellee has failed to carry his burden of proving a change in domicile. Appellant asserts Ms. Kanz lived in Illinois most of her adult life until about the time the donations were made. Appellant contends that although Ms. Kanz spent several years at the nursing care center, the fact that she never lived in the residence apartments of St. James Place evidences she did not intend to establish a permanent domicile in Louisiana when she moved there from Illinois. Appellant maintains that during Ms. Kanz's stay at the nursing home, she expressed her intent to move to a retirement community in Clifton, Texas, and never expressed any desire to establish a permanent residence in Louisiana.[11] Appellant maintains Ms. Kanz's intent remained constant until her death. Appellant also maintains that Ms. Kanz's ownership of CDs issued by banks in Texas during the last several years of her life evidences Kanz was not domiciled in Louisiana. Appellant asserts there is strong evidence in the record to support a finding that Ms. Kanz was domiciled in either Texas or Illinois, rather than Louisiana, and that Ms. Kanz's domicile remains a material issue of fact.
We do not find any material issues of fact regarding residence or domicile as asserted by appellant. Based on the facts set forth above, we find Ms. Kanz clearly maintained only one residence in Louisiana. That Louisiana residence is presumed to be her domicile. Appellant did not rebut this presumption. Ms. Kanz resided in Louisiana for nearly the last five years of her life. The evidence establishes Mrs. Wilson was a Louisiana resident/domiciliary at the time the joint accounts were established and, thereafter, until Ms. Kanz's death.

*1340 b. Effect of an Extra-Judicial Admission on the Issue of Domicile
In Texas probate proceedings, Mr. Kanz submitted sworn statements indicating Ms. Kanz was domiciled and had a fixed place of residence in Bosque County, Texas, as of the date of her death. Appellant urges that Mr. Kanz has judicially admitted that Ms. Kanz was domiciled in Texas, and that he and Ms. Kanz's estate should be prohibited from challenging Ms. Kanz's Texas domicile.
In Alexis v. Metropolitan Life Ins. Co., 604 So.2d 581 (La.1992), the supreme court considered whether plaintiff's allegation in his workers' compensation suit that he was disabled as a result of a work-related accident constituted a judicial admission against him in a subsequent suit wherein he sought benefits under an insurance policy. The court determined the allegation in the earlier workers' compensation suit was not a judicial admission with conclusive effect in the later proceeding. The court stated:
The Louisiana jurisprudence is clear that such an "extra-judicial" confession does not bind the claimant in subsequent litigation. The party who has made such an admission in a previous suit is not barred from denying the facts contained in that admission in a subsequent suit, unless the adverse party has been prejudiced by his reliance upon that admission. Rather, the admission is to be given the probative value it deserves as an admission of the party who made it.
604 So.2d at 582 (citations omitted).
In the present case, appellant does not maintain she has been prejudiced by relying on statements made by Mr. Kanz regarding domicile in the probate proceedings. Even considering the statements made by Mr. Kanz, we find they have no probative value regarding a determination as to Ms. Kanz's domicile. As stated above, the actual fact of residence and a real intention of remaining there, as disclosed by a person's entire course of conduct, are the controlling factors in ascertaining that person's domicile. We find no merit in appellant's argument that Mr. Kanz's extra-judicial admission creates a material issue of fact regarding domicile.

c. Contacts with Other States
Further examining the relationship of the states to the parties and the dispute, we note Ms. Kanz lived in Illinois from approximately 1945 until April of 1989. The joint tenancy signature cards pertaining to the CDs at issue apparently were not signed by Ms. Kanz until after she moved to Baton Rouge. However, we recognize that Mrs. Wilson maintains the joint accounts were established in Illinois prior to the time that Ms. Kanz relocated to Baton Rouge. At the time of Ms. Kanz's death, some of the funds at issue were located in Illinois and some were located in Louisiana. Later, Mrs. Wilson moved some of the funds which had remained in Illinois to Louisiana.
Texas' relationship to Ms. Kanz and Mrs. Wilson and to this dispute is limited. Although Mr. Kanz initiated Texas probate proceedings for Ms. Kanz's estate, Ms. Kanz had not lived in Texas for at least fifty years prior to her death. Ms. Kanz owned some movable property located in Texas, the ownership of which is not at issue in this appeal.

2. Other factors considered pursuant to La. C.C. art. 3515
An evaluation of the policies and needs of the interstate and international systems indicate that Louisiana, which requires the donations to be in authentic form,[12] has a compelling state interest in ensuring the true intent of the donor is effected. Louisiana's form requirements foster the clear establishment of property rights; challenges to ownership are reduced and third parties are able to rely on the notarial act. The countervailing policy of ease of transfer is promoted by the states which do not require a notarial act.
With respect to expectations of the parties, we recognize that Ms. Kanz and/or Mrs. Wilson may have justifiably expected that the law of Illinois would apply to determine ownership of property that remained in Illinois *1341 after Ms. Kanz relocated to Louisiana. However, we find they also should have had reason to anticipate that Louisiana law would apply to determine ownership due to their significant relationships with the state of Louisiana.
In light of Louisiana's relationship to the parties and the dispute, and in light of Louisiana's policies, we find it to be the state which would bear the most serious legal consequences if its law were not applied. Thus, we conclude this case is governed by Louisiana's law because it is the state whose policies would be most seriously impaired if its law were not applied to determine the validity of the purported donations. Since appellant concedes the donations are not valid under Louisiana law, we find Mr. Kanz has established that there are no genuine issues as to material fact and that he is entitled to judgment as a matter of law. The trial court properly granted the summary judgment in favor of Mr. Kanz.

III. CONCLUSION
For the above reasons, we affirm the April 25, 1995 judgment of the trial court, which granted the March 2, 1995 motion for summary judgment by plaintiff-appellee, Jack A. Kanz. Costs of this appeal are to be paid by defendant-appellant, Edna Belle Kanz Wilson.
AFFIRMED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court. This matter was originally submitted before the panel of Watkins, Gonzales, and Kuhn., JJ. Due to the recent death of Judge J. Louis Watkins, Jr., Judge Chiasson has been substituted to serve on the panel.
[2] Mrs. Wilson and Mr. Kanz are sister and brother and were Lena Kanz's niece and nephew, respectively.
[3] The petition alleges plaintiff was approved as executor pursuant to an order admitting Lena Kanz's will to probate in a proceeding pending in a Texas court.
[4] Plaintiff's specific allegations regarding the Transferred Funds (referred to by plaintiff as the Diverted Funds) and the Trip Funds are set forth in the First Amending Petition for Accounting, Declaratory Judgment and Return of Assets of Deceased Estate.
[5] Mrs. Wilson does not contend that any of her own money was deposited into any of the CDs at the time they were originally issued or at any time prior to the death of Ms. Kanz. Likewise, Mrs. Wilson does not contend that the Trip Funds or Transferred Funds were comprised of her own funds prior to the time the funds were allegedly donated to her.
[6] Pursuant to 1997 La. Acts 483, La. C.C.P. art. 1915(B)(1) was amended to provide that a partial summary judgment "shall not constitute a final judgment unless specifically agreed to by the parties or unless designated as a final judgment by the court after an express determination that there is no just reason for delay." Since the judgment appealed was signed (and this appeal was lodged and submitted for decision) prior to July 1, 1997, the effective date of Act 483, it does not specifically designate whether it is a final judgment. In Morgan v. The Earnest Corporation, 97-0869 (La.App. 1st Cir. 11/7/97); ___ So.2d ___, this court considered whether the amended version of article 1915(B) should be given retroactive application to a judgment signed prior to the effective date of Act 483. After examining the language of the amendment, this court found the legislature intended that the amendment to article 1915 should be applied prospectively to initial rulings, either oral or written, issued on or after July 1, 1997, the effective date of the Act. Thus, 1997 La. Acts No. 483, § 2, does not affect Wilson's appeal of the April 25, 1995 judgment.
[7] Appellant also asserts in brief that the second summary judgment, like the first summary judgment, was flawed from the outset because Mr. Kanz did not introduce evidence during the hearing on the summary judgment. In reviewing the second summary judgment, we have considered only those documents which were properly introduced into evidence prior to the trial court's April 25, 1995 judgment, along with the pleadings, answers to interrogatories, and admissions filed into the record. La. C.C.P. art. 966 B; Anderson v. Allstate Ins. Co., 93-1102 (La.App. 1st Cir. 4/8/94); 642 So.2d 208, 213-214 (on rehearing), writ denied, 94-2400 (La.11/29/94); 646 So.2d 404.
[8] Pursuant to 1997 La. Acts 483, § 1, the legislature amended La. C.C.P. art. 966 C, which addressed the movant's burden of proof, to provide as follows:

C.(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
In Morgan v. The Earnest Corporation, 97-0869 (La.App. 1st Cir. 11/7/97), ___ So.2d ___, this court found this amendment to be an interpretive law subject to retroactive application. Section 4 of Act 483 provides that the amendment is intended to clarify Acts 1996, No. 9, § 1 of the First Extraordinary Session of 1996, and to legislatively overrule all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3d Cir. 12/26/96); 685 So.2d 691, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41. Also see Berzas v. OXY USA, Inc., 29,835, p. 3-5 (La.App.2d Cir. 9/24/97); 699 So.2d. 1149. Thus, La. C.C. art. 966, as amended, is applicable to this appeal.
[9] The reference is to Book IV of the Civil Code pertaining to Conflict of Laws.
[10] According to Ms. Wilson's answers to interrogatories, the LaSalle Talman CD was established as a joint tenancy account on or before July 20, 1989. The First National Bank of Chicago CD was established as a joint tenancy account on March 27, 1989. In her deposition testimony, Ms. Wilson acknowledged that the joint tenancy card for the LaSalle Talman CD was signed and dated on July 13, 1989, and the joint tenancy card for the First National Bank of Chicago CD account was signed on April 29, 1989.
[11] Appellant's support for these contentions is found in an affidavit by Ms. Wilson, wherein she declares Ms. Kanz routinely expressed the intent to have a permanent residency in Texas. Appellee asserts these declarations by Mrs. Wilson are inadmissible hearsay. Appellant contends the statements are admissible as statements of the "then existing mental, emotional, or physical condition" of the declarant pursuant to La. C.E. art. 803(3). The issue of whether Ms. Kanz intended to make her principal establishment in Louisiana or Texas is based upon the actual state of facts and not what Ms. Kanz declared them to be. Successions of Rhea, 227 La. 214, 78 So.2d 838 (1955). Thus, even if we consider Mrs. Wilson's statements, they are not determinative regarding the issue of domicile.
[12] La. C.C. art. 1536 requires that an act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things. With the exception of the manual gift, La. C.C. art. 1538 also provides that a donation inter vivos of movable effects will not be valid unless a notarial act is passed.