CANNIZZARO, J.
h The plaintiff, Janean Clark, appeals from a summary judgment rendered by the district court in favor of the defendant, Mercury Insurance Company (“Mercury”). We affirm.
FACTS AND PROCEDURAL HISTORY
On July 29,1998, Ms. Clark, a California resident, was injured while walking down Decatur Street in the French Quarter. At the time, Ms. Clark was crossing Decatur at the intersection of St. Louis Street when a taxi being driven by Shahid Abbasi struck her. As a result of the accident, she sustained injuries to her left leg and spine.
Ms. Clark filed suit against Mr. Abbasi; his employer, Coleman Cab Company or Rollins Cab Service[1]; and its liability insurer, Legion Insurance Company (“Legion”), which provided $25,000.00 in liability coverage. Ms. Clark subsequently settled her case against Mr. Abbasi, the cab company and Legion for the sum of $24,250.00, $750.00 less than the full policy limits of the Legion ^policy. After reserving her rights, Ms. Clark filed the instant claim against Mercury, who had issued a policy of uninsured/underinsured motorist (“UM”) coverage to her in California.
Mercury subsequently filed a motion for summary judgment contending that the Louisiana Supreme Court’s decision in Champagne v. Ward, 2003-3211 (La.1/19/05), 893 So.2d 773, mandated that California law, not Louisiana law, was applicable to the matter. Mercury argued that under California law the failure of Ms. Clark to collect the full limits of the Legion liability policy precluded any UM claim she might have had against Mercury. Following a hearing, the trial court granted Mercury’s motion for summary judgment. Ms. Clark now appeals, arguing that the trial court erred in applying the Champagne decision retroactively.
STANDARD OF REVIEW
Appellate courts review grants of summary judgment de novo using the same standard applied by the trial court in deciding the motion for summary; judgment. Schmidt v. Chevez, 2000-2456, p. 4 (La.App. 4 Cir.1/10/01), 778 So.2d 668, 670. Under that standard, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affida *112 vits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Schmidt, 2000-2456 at p. 3, 778 So.2d at 670. “Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish [Sthese ends.” King v. Parish National Bank, 2004-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)).
DISCUSSION
The Supreme Court in Champagne v. Ward, supra, considered the issue of whether Louisiana law automatically applies to a foreign UM policy in a multi-state case when the accident occurs in Louisiana and involves a Louisiana resident, or whether a Louisiana court must engage in a choice-of-law analysis to determine which state’s law is applicable. In resolving a split among the circuit courts of appeal[2], the Court held that although Louisiana’s UM law, La. R.S. 22:1406(D)[3], can be applied to foreign insurance policies in most state cases where the accident occurred in Louisiana and involved a Louisiana resident, the provisions of the statute do not apply automatically. Instead, the trial courts are instructed to conduct a choice-of-law analysis to determine which state’s law should apply. The Court acknowledged that the objective is to identify the state whose policies will be most seriously impaired if its law is not applied to the particular issue involved in the lawsuit. Champagne v. Ward, supra, at 777.
In the Champagne case, the plaintiff and the defendant were involved in an automobile accident that occurred in New Orleans. At the time, the plaintiff was a | resident of Mississippi, and the vehicle that he was driving was covered by a policy of insurance that provided $10,000.00 in UM coverage, which was negotiated and issued in Mississippi. The defendant was a resident of Louisiana and was driving a vehicle covered by a policy of insurance negotiated and issued in Louisiana that provided $10,000.00 in liability coverage. Under Mississippi law, and according to the terms of the plaintiffs policy, the UM insurer’s liability was reduced on a “dollar for dollar” basis by the amount of liability coverage available from the tortfeasor.
The plaintiffs UM insurer moved for summary judgment, arguing that if Mississippi law were applied to the interpretation of the plaintiffs UM contract, then UM benefits would not be available to the plaintiff. The plaintiff responded, arguing that Louisiana’s UM statute applied to the *113 dispute, under which he was entitled to recover UM benefits. In granting summary judgment in favor of the UM insurer, the Supreme Court conducted a choice-of-law analysis, applying the provisions of Louisiana Civil Code arts. 3515 and 3537[4]. The Court found that | ¡^Mississippi had a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana had in providing an insurance remedy to an out-of-state resident who was injured while transitorily within the borders of Louisiana. The Court concluded:
The application of Louisiana law to the insurance policy would result in the abrogation of a Mississippi contract. Moreover, plaintiffs premium for UM coverage was based on the application of Mississippi law to the contract. Under a conflict-of-laws analysis, we conclude that Mississippi’s policies will be the most seriously impaired if its law is not applied to the insurance policy.
Champagne v. Ward, supra, p. 27, 897 So.2d at 789.
The instant case, for all intents and purposes, is on point with Champagne v. Ward. The only factual distinction is that Ms. Clark was a resident of California at the time of the incident, not Mississippi. Nonetheless, she was a resident of a foreign state. Applying the relevant provision of the California Insurance Code, we conclude that Ms. Clark has no right to claim any UM benefits from Mercury. California Insurance Code § 11580.2(p)(l)-(3) reads as follows:
(p) This subdivision applies only when bodily injury, as defined in subdivision (b), is caused by an underinsured motor vehicle.
If the provisions of this subdivision conflict with subdivisions (a) through (o), the provisions of this subdivision shall prevail.
(1) As used in the subdivision, “insured motor vehicle” is one that is insured under a motor vehicle liability policy, or automobile liability insurance policy, self insured, or for which a cash deposit or bond has been posted to satisfy a financial responsibility law.
(2) “Underinsured motor vehicle” means a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits *114 carried on the motor vehicle of the injured person.
|fi(3) This coverage does not apply to any bodily injury until the limits of bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment of judgments or settlements, and proof of the payment is submitted to the insurer providing the underinsured motorist coverage, [emphasis added]
It is clear from the above referenced statute that the State of California requires that the limits of liability on the part of the underinsured vehicle must be completely exhausted by reason of payment or settlements before an underin-sured motorist claim can be made. In support of its motion for summary judgment, Mercury submitted its requests for admissions to Ms. Clark and her responses thereto. This evidence discloses that the Legion policy liability limits were $25,000.00 and Ms. Clark settled her claim against Legion for $24,250.00, less than the full amount of its liability limits. In view of her failure to obtain the full policy limits from Legion, Ms. Clark has, under California law, forfeited her right to UM benefits.
Furthermore, we note that the terms of the Mercury policy in question specifically provide for the application of California law. Condition 31 of the policy states as follows, “(31). CHOICE OF LAW: All legal disputes concerning this policy shall be governed exclusively by California law.” It is well established where the parties stipulate the state law governing the contract, Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justify not honoring the contract as written. Continental Eagle Corporation v. Tanner & Co., 95-295 (La.App. 3 Cir. 10/4/95), 663 So.2d 204, 206. A choice-of-law provision in a contract is presumed valid until proven otherwise. The party seeking to prove the invalidity of the contractual provision bears the burden of proof. Id. Thus, given the choice-of-law provision in the Mercury policy, the trial court correctly applied California law.
Finally, we find no merit to Ms. Clark’s argument that the decision in Champagne v. Ward should not have been applied retroactively.
In determining whether a decision should be given retroactive effect, the Louisiana Supreme Court said the following three factors are to be considered:
1. The decision to be applied non-retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;
2. The merits and demerits must be weighed in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation;
3. The inequity imposed by retroactive application must be weighed.
Lovell v. Lovell, 378 So.2d 418, 421-21 (La.1979).
With regard to the first factor, the decision in the Champagne case did not establish a new principle of law. Moreover, the issue is not one of first impression whose resolution was not clearly foreshadowed. The first, second and third circuit appellate courts previously held that a foreign state’s law should be applied in certain situations, see fn.2, infra, and the Court adopted their reasoning in Champagne.
*115 As to the second factor, applying the choice-of-law analysis to the instant case certainly achieves the Court’s objective to identify the state whose policies will be most seriously impaired if its law were not applied to the particular issue | ^involved in the lawsuit. The application of Louisiana law, rather than California law, to the Mercury insurance policy would result in the abrogation of a California contract. Also, Louisiana law has long recognized and approved contractual choice of law clauses. Thus, California law should apply in this case.
The third factor, the inequity imposed by retroactive application, is of no consequence to this matter considering Ms. Clark was aware of Condition 31 of the Mercury policy that provided California law would govern in the event of a legal dispute.
In summary, we find that Mercury has met its burden of proving that California has a more substantial interest in this case, and Ms. Clark has failed to present factual support for her contentions. Thus, we find no error in the trial court’s finding that Mercury is entitled to summary judgment as a matter of law.
CONCLUSION
Accordingly, the judgment of the trial court in favor of Mercury Insurance Company is affirmed.
AFFIRMED

. It is not clear from the record whether Mr. Abbasi's employer at the time of the accident was Coleman Cab Company or Rollins Cab Service. However, it is clear that Legion Insurance Company was his employer's liability insurer.

. The first, second, and third circuit courts of appeal had held that courts must conduct a choice-of-law analysis to determine which state's UM law applies, even when the accident occurs in Louisiana and involves a Louisiana resident. See, Zuviceh v. Nationwide Ins. Co., 2000-0773 (La.App. 1st Cir.5/11/01), 786 So.2d 340; Adams v. Thomason, 32,728 (La.App.2d Cir.3/1/00), 753 So.2d 416; Anderson v. Olivier, 97-1102 (La.App. 3d Cir.1/7/98), 705 So.2d 301.
The fourth and fifth circuit courts of appeal had held that Louisiana law automatically applies to any UM policy when the accident occurs in Louisiana and involves a Louisiana resident, including a UM policy issued and negotiated in a foreign jurisdiction. See, Dekeyserv. Automotive Casualty Ins. Co., 97-1251 (La.App. 4th Cir.2/4/98), 706 So.2d 676; Austin v. Western World Ins. Co., 99-2541 (La. App. 4th Cir.5/17/00), 765 So.2d 390; Crutchfield v. Landry, 2000-0070 (La.App. 4th Cir. 1/31/01), 778 So.2d 1249; and Drew v. Martello, 98-1141, 98-1142 (La.App. 5th Cir.2/23/99), 729 So.2d 90.

. As noted by the Supreme Court in footnote 4 of its opinion, La. R.S. 22:1406(D) was redesignated as La. R.S. 22:680 by Act No. 456 of 2003, Section 3.

. La. C.C. art. 3515 provides:
Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied.
That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
La. C.C. art. 3537 provides, in part:
Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.