**SUCCESSION OF ROBERT**     *     **NO. 2019-CA-1069**
**ALFRED SCHIMEK, SR.**

                *

                **COURT OF APPEAL**

                *

                **FOURTH CIRCUIT**

                *

                **STATE OF LOUISIANA**

                * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-11837, DIVISION "B-1"
Honorable Rachael Johnson,
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Edwin A. Lombard, Judge Roland L. Belsome, Judge Paula A. Brown)

**BELSOME, J., CONCURS IN THE RESULT**

Laura W. Plunkett
Kathryn M. Knight
Michael Q. Walshe, Jr.
STONE PIGMAN WALTHER WITTMAN L.L.P.
909 Poydras Street, Suite 3150
New Orleans, LA 70112--4042
      COUNSEL FOR APPELLANT

William David Aaron, Jr.
Carolyn W. Gill-Jefferson
Dominic Joseph Gianna
DeWayne L. Williams
Anna A. Rainer
AARON & GIANNA, PLC
201 St. Charles Avenue, Suite 3800
New Orleans, LA 70170
      COUNSEL FOR APPELLEE

Russell J. Stutes, III
Russell J. Stutes, Jr.
STUTES & LAVERGNE, LLC
600 Broad Street
Lake Charles, LA 70601
      COUNSEL FOR VANGUARD

                       AFFIRMED
                       06/10/2020

This appeal arises from a contractual dispute. Appellants, the co-executors of the Succession of Robert Alfred Schimek, Sr., Denise Villeré Schimek, Planché Francois Villeré, and Ray Alan Schimek (the "co-executors"), and Appellee, Robert Alfred Schimek, Jr. ("Robert, Jr."), filed cross-motions for summary judgment seeking a determination of whether the Decedent's "Transfer on Death" ("TOD") beneficiary designation for his securities accounts set forth in contracts between the Decedent and brokerage companies—Vanguard and TD Ameritrade— was valid. The district court denied the co-executors' motion and granted Robert, Jr.'s, motion. The judgment on both motions was signed on December 17, 2019. From this judgment, the co-executors appeal. For the reasons that follow, the district court's judgment is affirmed.

### FACTS/PROCEDURAL HISTORY

Robert Alfred Schimek, Sr. ("Dr. Schimek"), a physician and businessman, died on November 4, 2018, while domiciled in Orleans Parish, Louisiana. At the time of his death, Dr. Schimek was married[1] to Denise Villeré Schimek ("Mrs. Schimek"). Dr. Schimek had two sons from a previous marriage, Robert, Jr., and Ray Alan Schimek ("Ray"), both of the age of majority. Dr. Schimek's Last Will and Testament (the "Will") was executed in 2013, in notarial form; the Will was presented to the trial court for filing, registry, and execution in accordance with law, and the co-executors of Dr. Schimek's succession were appointed.

---

[1] The co-executors explain that the couple married in 1979 and remained married until Dr. Schimek's death.

At the time of his death, Dr. Schimek had securities accounts with Vanguard and TD Ameritrade. In 2017, while domiciled in Louisiana, Dr. Schimek transferred his securities account to Vanguard and entered a contract with Vanguard, the Vanguard Transfer on Death Agreement (the "Vanguard contract"). In the Vanguard contract, Dr. Schimek and Vanguard agreed that in the event of his death, fifty percent of the account would be transferred to Robert, Jr., and fifty percent would be transferred to Mrs. Schimek. Following Dr. Schimek's passing, Vanguard transferred the proceeds to the named beneficiaries as agreed.[2]

As to the TD Ameritrade securities account, no evidence was introduced. The co-executors allege TD Ameritrade froze Dr. Schimek's account pending resolution of this matter.

In November 2018, Dr. Schimek's succession was opened, and the co-executors were appointed. In June 2019, the co-executors filed a petition for a declaratory judgment seeking a judgment providing the following:

1. Transfer on Death ["TOD"] designations are invalid as a matter of Louisiana law to transfer the Securities Accounts outside of probate;
2. [Dr. Schimek's] designation of Vanguard account number ****5227; TD Ameritrade Account No. ****5492 . . . "Transfer on Death" accounts did not effect a valid transfer under Louisiana law of those accounts upon [Dr. Schimek's] death; and
3. The Co-Executors shall take possession of all funds in Vanguard account number ****5227; TD Ameritrade Account No. ****5492 . . . as of [Dr. Schimek's] date of death and deposit those funds into a Succession account for distribution in accordance with the terms of [Dr. Schimek's] last will and testament.[3]

In response, Robert, Jr., filed, in July 2019, a petition for intervention, and the district court granted Robert, Jr.'s, request. Following, the co-executors filed

---

[2] The co-executors' allege Vanguard distributed $2.1 million dollars' worth of securities between the TOD beneficiaries—Robert, Jr., and Mrs. Schimek.

[3] In the petition for a declaratory judgment, the co-executors included Dr. Schimek's account with American Funds Securities. American Funds Securities settled the matter with the parties.

an amended petition for declaratory judgment naming Mrs. Schimek, Robert, Jr., Vanguard, and TD Ameritrade as defendants.

In August of 2019, the co-executors filed a motion for summary judgment on the grounds that Dr. Schimek's TOD beneficiary designations of the securities accounts were invalid as a matter of Louisiana law. No exhibits were attached to the summary judgment. In response, Robert, Jr., filed an opposition to the co-executors' motion for summary judgment. In addition, Robert, Jr., filed a cross-motion for summary judgment regarding only the Vanguard contract, praying that the district court declare:

1. the distribution of the proceeds of the Vanguard account, are governed by Pennsylvania, not Louisiana law [as per the agreement between Dr. Schimek and Vanguard];
2. that Vanguard's distribution of the proceeds of the Vanguard account, designated by Dr. Schimek to transfer on death to the named beneficiaries of said account, was proper;
3. that [Robert, Jr.] is the rightful owner of all proceeds of the Vanguard account that were transferred to him pursuant to the transfer on death designation made by Dr. Schimek; [and]
4. that the Amended Petition for Declaratory Judgment thereafter be dismissed with prejudice. . . .

In support of his motion for summary judgment, Robert, Jr., attached a letter from Dr. Schimek to Vanguard,[4] the Vanguard contract, and an affidavit by Robert, Jr.[5]

---

[4] In the letter dated October 14, 2017, Dr. Schimek wrote to Vanguard to confirm his designation of Robert, Jr., and Mrs. Schimek as TOD beneficiaries of the Vanguard securities account.

[5] In the affidavit, Robert, Jr., attested in pertinent part:

(2) In the summer of 2017, Dr. Robert Alfred Schimek, Sr. ("Dr. Schimek"), transferred an account with Fidelity bearing "transfer on death" designations of 50/50% to myself and Denise Villere Schimek to Vanguard (the "Vanguard Account");
(3) On or about October 14, 2017, Dr. Schimek submitted a letter to Vanguard for purposes of ensuring that Vanguard's records properly reflected Dr. Schimek's desire that the Vanguard Account maintained the TOD beneficiary designations of 50/50% to myself and Denise Villere Schimek;
(4) I reviewed the October 14, 2017 letter from Dr. Schimek to Vanguard, attached hereto as Exhibit "1", and the handwritten signature on same;

4

The co-executors responded with an opposition to Robert, Jr.'s, cross-motion for summary judgment and attached, as an exhibit, a copy of La. R.S. 9:1421, which addresses joint securities accounts. In addition, the co-executors filed a reply to Robert, Jr.'s, opposition to the co-executor's motion for summary judgment, and attached exhibits, including a copy of the Vanguard contract, an affidavit by Mrs. Schimek, and a blank TD Ameritrade contract.

A hearing on the motions for summary judgment was held on September 27, 2019. At the hearing, counsel for Robert, Jr., made several procedural objections: (1) the co-executor's opposition to Robert, Jr.'s, cross-motion for summary judgment was filed late; (2) the co-executor's reply was filed late; and (3) any exhibits attached to the co-executor's reply memorandum were prohibited under La. C.C.P. art. 966(B)(3). The district court allowed the co-executors to argue in opposition to Robert, Jr.'s, cross-motion for summary judgment, but prohibited reference to the exhibits attached to the co-executor's reply memorandum that included an affidavit by Mrs. Schimek, and a blank TD Ameritrade contract.

The district court granted Robert, Jr.'s, motion for summary judgment, finding that Pennsylvania law applied and the TOD designation of beneficiaries by Dr. Schimek in the Vanguard agreement was valid. In addition, the district court

---

(5) I am familiar with Dr. Schimek's signature and the signature on the October 14, 2017 letter is that of Dr. Schimek;

(6) I have also reviewed the Vanguard Transfer on Death Plan Agreement, attached hereto as Exhibit "2", and it is a true and correct copy of the Agreement that governed the Vanguard Account;

(7) Dr. Schimek was aware of the fact that designating a securities account as a transfer on death account meant that upon his death the proceeds of the account would pass outside of his Succession to the beneficiaries named on the respective transfer on death accounts; and

(8) Based on multiple conversations with Dr. Schimek, his intent was that the proceeds of the Vanguard Account transfer upon his death to the beneficiaries that he designated on said Account.

5

denied the co-executors' motion for summary judgment. The judgment was signed on December 17, 2019.[6] This appeal follows.

## DISCUSSION

On appeal, the co-executors essentially assert two assigned errors. First, the co-executors contend that Robert, Jr., lacks standing. Second, the co-executors assert that the district court erred by denying the co-executors' motion for summary judgment and granting Robert, Jr.'s, motion for summary judgment. Particularly, they contend that the TOD designation of beneficiaries in the TD Ameritrade and Vanguard contracts are null and void and that the district court was errant in applying Pennsylvania law to the Vanguard contract.

### *Standing*

The co-executors allege that Robert, Jr., a non-party to the Vanguard contract, lacks standing to enforce the performance of the contract; thus, he has no right to attempt to enforce the applicable choice-of-law provision in the Vanguard contract.[7]

Louisiana Code of Civil Procedure Article 681 provides, "[A]n action can be brought only by a person having a real and actual interest which he asserts." A third party beneficiary, such as Robert, Jr., has a right to demand performance of a contract when certain requirements are met. In *Williams v. City of New Orleans*,

---

[6] This was an amended judgment, as this Court remanded the initial judgment to the district court for amendment.

[7] Robert, Jr., complains that this issue was raised for the first time on appeal; thus, it is not properly before this Court. The transcript of the hearing on the motions for summary judgment reflects counsel for the co-executors raised Robert, Jr.'s, standing. In addition, an objection of lack of standing may be raised at any time, even for the first time in the appellate court if proof of grounds appear in record. *See* La. C.C.P. arts. 927, 928, and 2163. The record before this Court is sufficient to review this issue, and we find resolution of this issue necessary to render "a just, legal and proper judgment." La. C.C.P. art. 2164, comment (a).

6

15-0769, p. 7 (La. App. 4 Cir. 4/20/16), 193 So.3d 259, 264-65, this Court explained:

> "A contracting party may stipulate a benefit for a third person called a third party beneficiary." La. C.C. art. 1978. "Under Louisiana law, such a contract for the benefit of a third party is commonly referred to as a 'stipulation *pour autrui.*'" *Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary,* 05-2364, p. 7 (La.10/15/06), 939 So.2d 1206, 1211, *quoting Paul v. Louisiana State Employees' Group Benefit Program,* 99-0897, p. 5 (La. App. 1 Cir. 5/12/00), 762 So.2d 136, 140. . . .
>
> The Louisiana Supreme Court held that there are three requirements for a *stipulation pour autrui:* "1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee." *Joseph,* 05-2364, pp. 8-9, 939 So.2d at 1212. "The stipulation gives the third party beneficiary the right to demand performance from the promisor." La. C.C. art. 1981.

In the case *sub judice*, the stipulation was clearly for Robert, Jr., there was a certain benefit provided for Robert, Jr., a fifty percent share of Dr. Schimek's Vanguard securities account, and the benefit was the object of the contract. In addition, the benefit was transferred to Robert, Jr., at the time Robert, Jr., sought to intervene. As the requirements of a *stipulation pour autrui* were met, we find Robert Jr., has standing in this case to defend his benefit under the contract.

This claim lacks merit.

***Motion for Summary Judgment***

The co-executors assert that the district court erred by denying the co-executors' motion for summary judgment and granting Robert, Jr.'s, motion for summary judgment.

At the conclusion of the hearing, the district court opined:

7

[I] believe that based on the briefing and all of the exhibits that were submitted to the Court and the argument this morning, the issue is the contract that Mr. Schimek, the decedent, was free to enter into. I do believe he was free to contract and so he entered into this agreement. I understand counsel's argument now that the contract—you're not attacking the contract itself. You're attacking the provision that there's a transfer on death. I understand that argument.

I also understand that, and I started with this, you have choice of law provisions and we have conflict of law provisions. I don't believe that Louisiana law restricts residents from signing agreements that have choice of law provisions because people do all the time. . . .

I'm denying the Motion for Summary Judgment filed by the co-executors because I don't believe there's any genuine issue of material fact as to the validity of the transfer on death because we don't get to that. Pennsylvania law applies. He signed it, it governs. . . .

An appellate court's standard of review for a grant or denial of a summary judgment is *de novo*, and it employs the same criteria that district courts consider when determining if a summary judgment is proper. *Perniciaro v. McInnis*, 18-0113, pp. 8-9 (La. App. 4 Cir. 9/7/18), 255 So.3d 1223, 1230 (citations omitted). As the motion and cross-motion for summary judgment were filed in 2019, the applicable version of La. C.C.P. art. 966 provided that "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). No new documents may be filed with a reply memorandum. La. C.C.P. art. 966(B)(3), 2015 comments (d) and (k); *Gibbs Constr., L.L.C. v. Nat'l Rice Mill, L.L.C.*, 17-

8

0113, pp. 7-8 (La. App. 4 Cir. 2/21/18), 238 So.3d 1033, 1039, *writ denied,* 18-0464 (La. 5/11/18), 241 So.3d 1012. The burden of proof is on the mover; whereas, the adverse party has the burden to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).[8] "To affirm a summary judgment, [the Court] must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court." *Johnson v. Loyola Univ. of New Orleans*, 11-1785, p. 7 (La. App. 4 Cir. 8/8/12), 98 So.3d 918, 923.

*TD Ameritrade Contract*

The co-executors contend that the district court erred in failing to find the TOD designation of beneficiaries in the contract between Dr. Schimek and TD Ameritrade unlawful and against public policy; thus, it is null and void.

The district court was silent as to this issue. "If a trial court's judgment is silent with respect to a claim or issue placed before the court, it is presumed that the court denied the relief requested." *S.E. Auto Dealers Rental Ass'n, Inc. v EZ Rent to Own, Inc.*, 07-0599, p. 13 (La. App. 4 Cir. 2/27/08), 980 So.2d 89, 99 (citation omitted).

A review of the record reflects that the TD Ameritrade contract was not properly offered, filed, introduced, or admitted into evidence. As noted *supra*, in their reply brief, the co-executors attached a blank TD Ameritrade contract, which

---

[8] La. C.C.P. art. 966 (D)(1) provides that "[i]f the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense."

9

was properly excluded by the district court. No other evidence was submitted in support of this claim to find the co-executors were entitled to summary judgment as a matter of law.[9]

This claim is denied.

*The Vanguard Contract*

Before we turn to the merits of the co-executors' arguments, we examine the Vanguard contract. The Vanguard contract provided:

Article I: Introduction

1.1 In General. You may establish a Vanguard Transfer on Death Plan (the "Plan") by submitting a completed and signed Vanguard Transfer on Death Plan Form* (the "Application Form") to Vanguard, subject to Vanguard's acceptance. Eligible accounts established under the Plan are deemed registered in beneficiary form in accordance with the laws of Pennsylvania. The Plan will cover the eligible Vanguard® accounts that you designate in writing to be covered by the Plan (the "Plan Accounts"). You may make changes to the Plan or may terminate the Plan by submitting a written request to Vanguard to such effect. This Vanguard Transfer on Death Plan Agreement ("Agreement"), together with the Application Form, contains the terms and conditions that will apply to your Plan. In addition, your Plan Accounts will be subject to all terms and conditions included in the current prospectuses of the relevant Vanguard mutual funds or the Vanguard Brokerage Account Agreement, if applicable.

1.2 Purpose of Plan. The Plan provides a way for you to pass ownership of your Plan Accounts, without probate, to your designated Plan beneficiaries after your death (or the death of the last surviving joint owner of your Plan Accounts, if applicable). . . . However, your Plan will not supersede any rights that creditors or other persons may have to your Plan Accounts under applicable law.

\* \* \*

Article II: Plan Accounts

---

[9] The co-executors request that this Court enter a default judgment against TD Ameritrade because it failed to answer or appear. However, the appellate court is not the proper court to seek a default judgment, and the record before this Court does not reflect the co-executors moved for a default judgment in the district court. Consequently, this issue is not properly before this court and is denied. *See* La. C.C.P. arts. 1911, 1915(B) and 2083.

2.3 Types of Accounts Eligible for Plan. Only individual nonretirement accounts are eligible to be designated as Plan Accounts covered by your Plan. Other types of accounts that you may maintain with Vanguard, including trust accounts, accounts subject to community property laws . . . and retirement accounts, are not eligible.

Article III: Transfer of Plan Accounts After Death

3.1 Individual Accounts. If your Plan Accounts are registered as individual accounts, Vanguard will transfer ownership of such accounts to your Plan Beneficiary (as defined in Article IV) after your death, upon receipt of the required documentation described in Article IV.

* * *

Article V: Miscellaneous

* * *

5.8 Governing Law. The Plan shall be governed by, construed, administered, and enforced according to the laws of Pennsylvania.

In a letter dated October 14, 2017, from and signed by Dr. Schimek to Vanguard, Dr. Schimek confirmed his TOD beneficiaries as Robert, Jr., and Mrs. Schimek, with each receiving a fifty percent share.

As set forth *supra*, the Vanguard contract provided that Pennsylvania law would govern the contract, and the district court applied Pennsylvania law. Pennsylvania adopted similar legislation to the Uniform Transfer on Death Security Registration Act (the "TOD Act") which in 1989, the National Commissioners on Uniform State Laws promulgated. The TOD Act allows securities owners to register their shares, and mutual funds accounts in a TOD form, which permits a non-probate transfer of securities accounts. The owner of the securities account retains the control of the securities during his or her lifetime, and the TOD designee has no right in the security. *See* Uniform Transfer on Death

(TOD) Security Registration Act, Transfer of Stock, § 8:2 (7th Ed) and 20 PA. STAT. AND CONS. STAT. ANN. § 6401-6413. Under Pennsylvania law, a "transfer on death resulting from a registration in beneficiary form is effective by reasons of the contract regarding the registration between the owner and the registering entity . . . and is not testamentary." 20 PA. STAT. AND CONS. STAT. ANN. § 6409(a). In addition, "[a] registration governed by the law of a jurisdiction in which this or similar legislation is not in force or was not in force when a registration in beneficiary form was made is nevertheless presumed to be valid and authorized as a matter of contract law." 20 PA. STAT. AND CONS. STAT. ANN § 6403.

The co-executors assert that the district court erred in applying Pennsylvania law instead of Louisiana law. The co-executors argue that although the contract between Dr. Schimek and Vanguard setting up the brokerage account was lawful, the provision transferring the securities in the event of Dr. Schimek's death was unlawful under Louisiana law. The co-executors explain that the Vanguard contract transferring the securities account, in the event of Dr. Schimek's death, does not comply with Louisiana's laws to transfer property at death, which requires the transfer to be in notarial or olographic form. *See* La. C.C. arts. 1574,[10] 1575,[11] and 1576.[12]

---

[10] "There are two forms of testaments: olographic and notarial." La. C.C. art. 1574.

[11] "An olographic testament is one entirely written, dated, and signed in the handwriting of the testator." La. C.C. art. 1575(A).

[12] "A notarial testament is one that is executed in accordance with the formalities of Articles 1577 through 1580.1." La. C.C. art. 1576.

In support of their assertion that Louisiana law should be applied, the co-executors cite *Kanz v. Wilson*, 96-0882 (La. App. 1 Cir. 11/17/97), 703 So.2d 1331, wherein the decedent purported donations of money to her niece in the form of joint accounts and certificates of deposit. The executor of the decedent's estate sought a declaratory judgment to declare the donations as funds for the estate. The donations were not in proper form under Louisiana law, but were in proper form under Texas law. The First Circuit affirmed the district court's ruling that determined there was a conflict in Louisiana and Texas law as to the form required for donations of incorporeal movables, and after applying a conflict of law analysis, found that Louisiana law applied. *Id.*, 96-0882, p. 17, 703 So.3d at 1341.

Robert, Jr., counters that the district court properly found that this was a contractual issue and determined the contract clearly provided that Pennsylvania law applied.

Louisiana Civil Code Article 3537 provides that "[e]xcept as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. . . ."[13] In reviewing a choice of law issue, a court's first task is to determine which jurisdictions have meaningful contacts to the dispute. Dr. Schimek was domiciled in Louisiana, and the Vanguard contract, which involved

_____

[13] The factors the court looks to, as provided for in La. C.C. art. 3537, include:

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

interstate commerce,[14] provided that Pennsylvania law governs the agreement. As a result, both Louisiana and Pennsylvania have an interest in having their laws applied to this dispute which raises a potential choice of law issue.

Next, this Court must determine whether any meaningful difference exists between the laws of these two jurisdictions. "If the governing law of each jurisdiction is identical, or so similar that the same result would be reached under either law, a 'false conflict' exists and, thus, no need exists to determine which state's law applies." *Lee v. Sapp*, 14-1047, pp. 4-5 (La. App. 4 Cir. 3/4/15), 163 So.3d 60, 63 (citing *Arabie v. Citgo Petroleum Corp.,*10-2605, p. 5 (La. 3/13/12), 89 So.3d 307, 327, *citing* Eugene F. Scoles, et al., *Conflict of Laws* 28, n.16 (4th ed. 2004)("[f]alse conflicts also include cases in which the laws of the involved states are identical, or different, but produce identical results").

We find the dispute in this case is contractual; thus, we will examine if there is a conflict in contract law between Louisiana and Pennsylvania.

Under Louisiana law, in order to confect a valid contract, four elements are required: (1) the capacity to contract; (2) mutual consent; (3) a certain object; and (4) a lawful cause. *See Brady v. Pirner*, 18-0556, pp. 11-12 (La. App. 4 Cir. 12/5/18), 261 So.3d 867, 875 (quoting *Fairbanks v. Tulane Univ.*, 98-1228, p. 5 (La. App. 4 Cir. 3/31/99), 731 So.2d 983, 986); La. C.C. arts. 1918, 1927, 1966 and 1971. Similarly, under Pennsylvania law, the essential elements of a contract are that the parties must have intent to be bound by the agreement, the terms of the agreement must be sufficiently definite, and consideration must exist. *Johnston the*

---

[14] "A contract involves interstate commerce when it affects commerce," and "[a]greements to transact in securities clearly involve interstate commerce." *Alford v. Johnson Rice & Co.*, 99-3119, p. 4 (La. App. 4 Cir. 11/15/00), 773 So.2d 255, 258 (citations omitted).

14

*Florist, Inc. v. TEDCO Const. Corp.*, 441 PA Super. 281, 291, 657 A.2d 511, 516 (1995).[15] In addition, Louisiana and Pennsylvania apply similar principles in interpreting contracts:

1. the interpretation of a contract is a question of law for the court, if the contract is unambiguous;
2. the court must interpret the meaning of the terms of the contract solely within its four corners of the written instrument, consistent with the expressed intent;
3. no extrinsic evidence is considered unless the terms of the contract are ambiguous;
4. a contract is not ambiguous merely because the parties do not agree on its construction; and
5. the contract is the law between the parties if the contract is clear, explicit, and leads to no absurd consequences.

*See RESPA of Pennsylvania, Inc. v. Skillman*, 2001 PA Super 30, 12, 768 A.2d 335, 341 (2001); *Suffolk Constr. Co. v. Reliance Ins. Co.*, 221 A.3d 1205, 1211 (Pa. 2019); *Brady*, 18-0556, p. 12, 261 So.3d at 875; *Reed v. 7631 Burthe St., LLC*, 17-0476, p. 11 (La. App. 4 Cir. 12/28/17), 234 So.3d 1201, 1208 (quoting *Olivier v. Xavier Univ.*, 553 So.2d 1004, 1008 (La. App. 4 Cir. 1989). Furthermore, under both Louisiana and Pennsylvania contract law, the object of the contract must not be against the law or public policy. Louisiana Civil Code art. 1971 provides that "[p]arties are free to contract for any object that is lawful possible and determined or determinable." The government or the state, however, restricts a parties' right to contract if the "proposed bargain has a deleterious effect on the public or otherwise violates public policy." *S.E. Auto Dealers Rental Ass'n*, 07-0599, p. 10,

---

[15] In *Aaron & Turner, L.L.C. v. Perret*, 07-1701, p. 7 (La. App. 1 Cir. 5/4/09), 22 So.3d 910, 915, the Court explained consideration is not required under Louisiana law:

> Louisiana does not follow the common law tradition that requires consideration to effect an enforceable contract. Rather, the mere will of the parties will bind them, without what a common law court would consider to be consideration to support a contract, so long as the parties have a lawful "cause." The cause need not have any economic value. *Sound/City Recording Corp. v. Solberg,* 443 F.Supp. 1374, 1380 (D.C.La.1978).

980 So.2d at 97. A "contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral." *Baker v. Maclay Properties Co.*, 94-1529, p. 14 (La. 1/17/95), 648 So.2d 888, 895. Likewise, under Pennsylvania law, "[c]ontracts which offend against the common law and public policy are void." *Weeks v. Lippencott*, 42 Pa. 474, 476 (1862).

We find, unlike in *Kanz*, 703 So.2d 1331, that there is no meaningful difference between Louisiana and Pennsylvania laws governing contracts; thus, a "false conflict' exists. Notwithstanding, upon review, the Vanguard contract clearly and explicitly provided that Pennsylvania law applied. It is well established that parties are generally free to stipulate the state law to govern the contract:

> Louisiana conflict of laws principles require that the stipulation be given effect, unless there is statutory or jurisprudential law to the contrary or strong public policy considerations justify not honoring the contract as written. *Continental Eagle Corporation v. Tanner & Co.*, 09-295 (La. App. 3 Cir. 10/4/95), 663 So.2d 204, 206. A choice-of-law provision in a contract is presumed valid until proven otherwise. The party seeking to prove the invalidity of the contractual provision bears the burden of proof. *Id.*

*Clark v. Legion Ins. Co.*, 06-0320, pp. 6-7 (La. App. 4 Cir. 11/29/06), 947 So.2d 110, 114. *See also, United States Leasing Corporation v. Keiler*, 290 So.2d 427, 430 (La. App. 4th Cir. 1974)(wherein this Court held that parties to a contract may agree on the law of the state to control the contract, but "the parties may not contract to terms which are against the public policy of the state where the contract is made and where it is to be performed.").

The co-executors assert the contract should not be honored because it is contrary to Louisiana's law and public policy. The co-executors argue that Louisiana legislature has not passed the TOD Act to allow[16] TOD of securities

---

[16] The co-executors explain:

accounts to designated beneficiaries.[17] In *Crowley v. GoAuto Insurance Company*, 19-0643, p. 10 (La. App. 4 Cir. 11/27/19), 286 So.3d 466, 473 (citation omitted), this Court explained that "[p]ublic policy is set by the legislature in enacting statutes." We note that the Louisiana legislature has not explicitly authorized nor specifically prohibited TOD transfers for securities accounts. Louisiana law, however, allows assets to pass upon death to designated beneficiaries for

---

In 1997, the Louisiana State Legislature adopted a resolution directing the Louisiana Law Institute to study and make recommendations regarding the possible adoption of the Uniform Law on Nonprobate Transfer on Death and the Uniform Transfer on Death Security Registration Act. *See* 1997 La. House Concurrent Resolution No. 200. Also in 1997, the Louisiana State Legislature first proposed legislation that would have authorized TOD Designations for securities accounts. *See* 1997 La. S.B. 1216. That legislation failed to pass, as did similar attempts in 1998 (1998 La. S.B. 45), 1999 (1999 La. H.B. 185), 2004 (2004 La. S.B. 707), and 2005 (2005 La. H.B. 213).

[17] Robert, Jr., counters although Louisiana has not adopted the TOD Act in full, review of the Louisiana Commercial Laws (Title 10) which regulates securities transfer indicates such transfers are allowed. Robert, Jr., cites to La. R.S. 10:8-102 which sets forth the following definitions:

(7) "Entitlement holder" means a person identified in the records of a securities intermediary as the person having a security entitlement against the securities intermediary. If a person acquires a security entitlement by virtue of R.S. 10:8-501(b)(2) or (3), that person is the entitlement holder.

(8) "Entitlement order" means a notification communicated to a securities intermediary directing transfer or redemption of a financial asset to which the entitlement holder has a security entitlement.

(9) "Financial asset," except as otherwise provided in R.S. 10:8-103, means:
a security;

Robert, Jr., argues Dr. Schimek was the "entitlement holder" of the Vanguard account, and he made an "entitlement order" via the Vanguard agreement to designate Robert and Mrs. Schimek as beneficiaries. The "entitlement order" was effective if made by the "appropriate person." La. R.S. 10:8-107(b)(l). An "appropriate person" is defined in La. R.S. 10:8-107(a)(3) "with respect to an entitlement order, the entitlement holder." Robert, Jr., argues that Dr. Schimek, as the original entitlement holder, was the appropriate person to make the entitlement order. In support, Robert, Jr., cites to comment (a) to La. R.S. 10:8-107 which provides in part:

2. . . . If the registration of a security or a securities account contains a designation of a death beneficiary under the Uniform Transfer on Death Security Registration Act or comparable legislation, the designated beneficiary would, under that law, have power to transfer upon the person's death and so would be the appropriate person. . . .

17

retirement accounts, life insurance, pensions, and certain bank accounts, such as payable on death (POD) accounts. These types of transfers are treated as nonprobate transfers that occur by contractual arrangements:

> Life insurance and pension benefits pass to designated beneficiaries at the decedent's death, but these arrangements are not probate transfers; they occur by contractual arrangements made during the decedent's lifetime and are not regarded as property transfers. . . . Certain bank accounts, such as payable on death (POD) accounts, are also nonprobate transfers.

Louisiana Civil Law Treatise, Nonprobate Transfers, 11 La. Civ. L. Treatise, Trusts § 1:6 (2d ed.)(footnotes omitted). Consequently, in light of legislation allowing similar assets to be transferred contractually, we find the co-executors' argument—that the contractual provision providing for the TOD of Dr. Schimek's securities accounts is contrary to Louisiana law and public policy— unpersuasive.

The co-executors continue that Louisiana has a compelling state interest in requiring donations to be in authentic form, to ensure that the true intent of the donor is carried out. The co-executors, however, do not contest that it was Dr. Schimek's intent that Robert, Jr., and Mrs. Schimek be designated as the beneficiaries with each receiving a fifty percent share. Dr. Schimek's letter to Vanguard, attached to Robert, Jr.'s, motion for summary judgment, evidences Dr. Schimek's intent. Consequently, the co-executors fall short in showing how this provision in the contract has a deleterious effect on the public to warrant the court to restrict honoring Dr. Schimek's contract with Vanguard.

Next, the co-executors assert that allowing the TOD transfer of Dr. Schimek's securities account does not protect creditors. The Vanguard contract, however, specifically states that "your Plan will not supersede any rights that creditors . . . may have to your Plan Accounts under applicable law."

Finally, we note that Louisiana's public policy is to protect forced heirs and the community property regime.[18] However, the record does not reflect forced heirship is an issue in this case. Moreover, the co-executors fail to present any evidence to support that the securities account was part of the community property regime, which will be discussed *infra*.

Accordingly, we conclude the district court correctly applied Pennsylvania law as set forth in the Vanguard contract.

*Eligibility of the account under the contract*

The co-executors argue that the Vanguard contract was void because Dr. Schimek's securities account was an ineligible account under the terms of the Vanguard contract. The co-executors explain that "regardless of whether the Vanguard securities account ultimately is determined to hold funds that are Dr. Schimek's separate property . . . community property, or a combination thereof, the account unquestionably is subject to community property laws."[19]

---

[18] The legislative history gives insight on the motivations and concerns of passing the TOD Act. For example in La. R.S. 6:1255 (which addresses bank accounts which allow TOD), the history of House Bill 1889 reflects it was introduced to provide a "low-cost and automatic method" to transfer a decedent's property including securities. The bill proposed adopting a portion of the TOD Act with modification to protect "forced heirs"—children under the age of twenty-three and/or who were incapacitated—and community property under Louisiana law. The bill requested that the Louisiana State Law Institute to study and make a recommendation. Also, 1999, the House passed resolution for the Louisiana State Law Institute to study the feasibility of adopting the TOD act and expressed a need for "fast and efficient transfers of securities at the time of death of the owner." *See* Historical and Statutory Notes, La. R.S. 6:1255.

[19] Robert, Jr., correctly points out that the co-executors failed to argue that the contract was void because Dr. Schimek's securities account was an ineligible account in their motion for summary judgment. *See* La. C.C.P. art. 966(F) (which provides that "[a] summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time."). This issue, including the community property argument, was asserted in the co-executors' reply brief, and at the hearing on the motions for summary judgment. At the hearing, in response, Robert, Jr., introduced a marriage contract entered into by the Schimeks in 1979. The marriage contract did not reference the securities accounts. Because the district court allowed oral arguments as to this issue, we reviewed it.

The co-executors submitted no evidence to support that Dr. Schimek's Vanguard securities account was ineligible for the TOD designation because it was an "account[] subject to community property laws."[20] In contrast, within the four corners of the contract, it unambiguously provided only "individual nonretirement accounts are eligible to be designated as Plan Accounts covered by your Plan," and specifically excluded accounts subject to community property laws. The Vanguard contract continued that "[i]f your Plan accounts are registered as individual accounts, Vanguard will transfer ownership of such accounts to your Plan Beneficiary. . . after your death upon receipt of the required documentation . . . ." There is no dispute that Vanguard transferred the ownership of the securities account, as provided for in the Vanguard contract, to Robert, Jr., and Mrs. Schimek.

We conclude the co-executors failed to prove Dr. Schimek's account was ineligible under the Vanguard contract; thus, the co-executors are not entitled to summary judgment as a matter of law as to this claim.

After a *de novo* review, we determine that the district court did not err in granting Robert, Jr.'s, cross-motion for summary judgment and denying the co-executors' motion for summary judgment.

---

[20] Dr. Schimek's Will provided in part:

> A. Jointly-Owned Property. I leave to my wife in full ownership all of my interest in any property which we own Jointly or which is our community property. My lawyer has a list of property and accounts which are jointly owned.

Despite the Will alleging Dr. Schimek's attorney had a list of jointly owned and community property, no evidence was introduced by the co-executors to show that the Vanguard account was included in the list.

## CONCLUSION

For the foregoing reasons, the district court's judgment is affirmed.

**AFFIRMED**